UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| RONALD K. BAIN | CIVIL ACTION |
| VERSUS | |
| GEORGIA GULF CORPORATION, ET AL | NO. 99-392-C |

## RULING ON MOTION FOR JUDGMENT AS A MATTER OF LAW

Following an eight day trial in this case, a jury found in favor of plaintiff, Ronald K. Bain. The jury concluded that plaintiff proved by a preponderance of the evidence that defendant, Georgia Gulf, discharged plaintiff in retaliation for his having disclosed environmental violations. The jury also concluded that plaintiff did not act without direction or authorization from defendant and deliberately violate environmental regulations by recording incorrect readings of zeros while performing the Reactor Open Loss procedure.

At the close of plaintiff's case and again at the close of all of the evidence in the trial, defendant moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. The court deferred ruling on the Rule 50 motion, and ordered the parties to simultaneously file briefs addressing defendant's motion. The court is now ready to rule on the motion.

Doc#1495

## BACKGROUND

Since 1982, Ronald K. Bain (Mr. Bain) has been employed at Georgia Gulf Corporation (Georgia Gulf) in Plaquemine, Louisiana. In early 1995, Mr. Bain requested and was transferred to the top deck area where he worked as a top deck operator. As a top deck operator, Mr. Bain was required to work around reactors and perform various manual tasks necessary to complete the process of producing Polyvinyl Chloride ("PVC").

In September, 1996; January, 1997; and May, 1997, Mr. Bain provided deposition testimony in a separate legal proceeding involving Georgia Gulf. During his deposition, Mr. Bain testified that top deck operators were reporting false zero readings in their PVC Reactor Open Loss testing. This test required the top deck operator to open the reactor and measure the level of vinyl chloride concentration being released into the atmosphere with a Threshold Level Value meter (TLV) to insure that Georgia Gulf was compliant with environmental regulations.

Georgia Gulf's employee policy guide consisted of a Corrective Action Program ("the program"). This program was designed to address employees' disciplinary issues. The program consisted of four steps of disciplinary action. The fourth step of the program was the last step prior to termination. In March, 1995, Mr. Bain was disciplined for committing an error which caused a release of vinyl chloride. As result of this error, Mr. Bain was placed in the third step of the program.

On July 1, 1997, Mr. Bain was placed in the fourth step of the program because he was caught sleeping on the job. As a part of the sanctions imposed for this violation, Mr. Bain was required to take two days off and return to work with a written action plan which addressed his sleeping on the job and his job performance. In his written action plan, Mr. Bain indicated that work-related problems where brought on by personal problems away from work. Mr. Bain further indicated that he was dealing with the stress of marital problems and medical problems with one of his children. Following his required days off, Mr. Bain returned to work.

However, in April, 1998, Mr. Bain threatened one of his co-workers with physical harm because he believed the co-worker took some photographs from his work bag. On May 4, 1998, Mr. Bain was terminated from Georgia Gulf.

On or about April 27, 1999, Mr. Bain filed suit against Georgia Gulf, alleging violations of Louisiana Revised Statute 30:2027, the Louisiana Whistleblower Statute. Mr. Bain alleged that he was terminated from his employment at Georgia Gulf because he had reported environmental violations committed by defendant during his deposition testimony in the previously mentioned separate legal proceeding.

## APPLICABLE LAW

Rule 50(a)(1) of the Federal Rules of Civil Procedure provides, as follows:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue

against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot, under the controlling law, be maintained or defeated without a favorable finding on that issue.

In other words, under Rule 50, the Court must determine whether there is sufficient evidence to support the jury's verdict, and in so doing, all evidentiary conflicts are to be resolved in favor of the successful party and that party is to be given the benefit of all reasonable inferences. In considering a motion for judgment as a matter of law, the court should consider all of the evidence–not just that evidence which supports the non-mover's case–but in the light and with all reasonable inferences most favorable to the party opposed to the motion.[1] If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting the motion is proper.[2] On the other hand, if there is substantial evidence opposed to the motion, that is evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied.[3]

---

[1] **Viazis v. American Ass'n of Orthodontists,** 314 F.3d 758, 761-62 (5th Cir. 2002), cert. denied, 538 U.S. 1033, 123 S.Ct. 2078, 155 L.Ed.2d 1063 (2003).

[2] **Arsement v. Spinnaker Exploration Co., L.L.C.,** 400 F.3d 238, 248-49 (5th Cir. 2005).

[3] **Viazis,** 314 F.3d at 761.

The court, however, leaves credibility determinations, the weighing of the evidence, and the drawing of all legitimate inferences from the facts to the jury.[4] A mere scintilla of evidence, however, "'is insufficient to present a question for the jury'" as "there must be a conflict in substantial evidence to create a jury question.'"[5]

## DISCUSSION

Applying the above standard to the evidence in this case, the court finds that Georgia Gulf's motion does have merit. In its motion, Georgia Gulf argues that Mr. Bain's claims are barred by the "clean hands" component of LSA-R.S. 30:2027). In opposition, Mr. Bain asserts that the evidence supports a finding that falsely recording zeros was a long-standing Georgia Gulf practice which was authorized and implicitly, if not expressly, directed by Georgia Gulf management.

Section C of LSA-R.S. 30:2027, provides, as follows:

This Section shall have no application to any employee who, acting without direction from his employer or his agent, deliberately violates any provision of this Subtitle or of the regulations, or permit or license terms and conditions in pursuance thereof.

At trial, Randy Aucoin (Mr. Aucoin), who was employed as a senior production manager over a PVC unit with Georgia Gulf until 1995, testified that he went to the top deck area on a daily basis. Mr. Aucoin testified that the ROL procedure was being done in a haphazard manner. He stated that he would explain to a technician

---

[4] **DP Solutions, Inc. v. Rollins, Inc.,** 353 F.3d 421, 427 (5th Cir. 2003).

[5] **Id.** (quoting **Foreman v. Babcock & Wilcox Co.,** 117 F.3d 800, 804 (5th Cir. 1997).

Doc#1495          5

that part of his job assignment required the technician to take the reading of the PVC release because it was an environmental hazard and important. He further testified that he complained to the shift supervisors and the other senior production manager, Al Hasse, about incorrect procedure being used when taking ROL readings. Mr. Aucoin testified that he always made sure that technicians, under his supervision, did the ROL procedure correctly. Mr. Aucoin indicated that if he noticed an employee failing to follow the correct procedure, he would correct the employee and make sure the employee was using the appropriate ROL procedure. Mr. Aucoin further testified that Mr. Bain asked him about the ROL procedure, and he told Mr. Bain to follow the procedure and report the actual readings that he received. Mr. Aucoin indicated that he never told anybody to write down zeros and never heard any other supervisor tell employees to write down zeros. According to Mr. Aucoin, the policy of the supervisors and Georgia Gulf was to record the actual reading. Mr. Aucoin also testified that he was satisfied that the ROL procedure as written by Georgia Gulf was an appropriate procedure.

Glen Marcantel (Mr. Marcantel) was employed with Georgia Gulf in the PVC unit in 1995 as a production technician/top deck operator. He testified that during the ROL procedure, he recorded zeros when the TLV meter actually showed a release of PVC in the atmosphere. Mr. Marcantel stated that when he transferred to the PVC unit in 1995, the practice was to record false zero readings. Mr. Marcantel stated that it was the "atmosphere of the production" to record false zeros

on the Open Lid Loss Sheet. Mr. Marcantel testified to record otherwise would slow down production and Georgia Gulf wanted high production. Mr. Marcantel testified that no one ever told him to record false zero readings. He testified that he did not know of anyone above a senior technician who knew about the false zero recordings. Mr. Marcantel said that no shift supervisor knew that the operators were reporting false zero readings.

Paul Traigle (Mr. Traigle) was employed at Georgia Gulf as an operator/technician with the PVC unit from February, 1992 through May, 2003. Mr. Traigle testified that he was trained on the ROL procedure and had to take readings in the reactor. Mr. Traigle testified that prior to 1996, he along with other operators would get a reading with the TLV meter and would still falsely report a zero reading on the Open Lid Loss sheet. He indicated that he did not believe he was the only operator writing down zeros after getting a reading with his meter and that writing down false zeros was "standard practice". Mr. Traigle stated that writing false zeros was "just the norm of how things were done." Mr. Traigle testified that no one in management told him to write down zeros when he really did not get a zero reading. Mr. Traigle further testified that in 1996, he was unaware of any supervisor who knew he was writing down zeros incorrectly.

Donald Derosa Jr., employed as a top deck operator at Georgia Gulf, testified that everybody was taught to record zeros. Mr. Derosa testified that no manager or supervisor ever told him that they wanted him to record false zeros.

Mr. Bain testified that he knew what the correct ROL procedure was and he was not confused about how to perform the ROL procedure. Mr. Bain testified that he knew the procedure required him to write down the actual reading. He testified that he spoke with one of the supervisors, Randy Aucoin, about writing down zeros during the ROL procedure and that Mr. Aucoin told him to write down what he saw and to follow the procedure. Mr. Bain indicated that he knew of no one who was punished for reporting violations.

The Court finds that the evidence clearly shows that Mr. Bain's actions of writing down incorrect recordings of zero in the ROL procedure was not at the direction of or authorized by his employer or an agent of the employer. Mr. Bain personally spoke with one of the higher ranking Georgia Gulf supervisors (Mr. Aucoin) and was told to follow the ROL procedure which instructed employees to record the actual reading from the TLV meter. Consequently, the court finds that there is no legally sufficient evidentiary basis for a reasonable jury to find that Mr. Bain acted with direction or authority from his employer or an agent of his employer when he incorrectly recorded zeros during the ROL procedure. Thus, under the controlling law, Mr. Bain's deliberate violation of the environmental regulations applicable to the production of PVC at the Georgia Gulf facility bars his recovery under the Louisiana Whistleblower Statute, and the defendant is entitled to judgment

as a matter of law.  Accordingly,

The oral Motion for Judgment as a Matter of Law by defendant, Georgia Gulf Corporation, is GRANTED.  This cased is hereby DISMISSED.

Baton Rouge, Louisiana, this 20th day of December, 2010.

_____
RALPH E. TYSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA